**F I L E D**
MURRAY COUNTY, OKLAHOMA

IN THE DISTRICT OF MURRAY COUNTY
STATE OF OKLAHOMA

JAN **1 8** 2022

Jodi Jennings, Court Clerk
By_____ Deputy

| | |
|---|---|
| 1. ALFRED D. PHELPS III, ) | |
| ) | |
| Plaintiff, ) | Case No. CJ-2022- |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | ATTORNEY LIEN CLAIMED |
| 1. KERR MACHINE CO., d/b/a ) | |
| Kerr Pumps and Flow Valve ) | |
| ) | |
| Defendant. ) | |

## PETITION

**COMES NOW THE PLAINTIFF,** Alfred D. Phelps III, and hereby pleads his claims as follows:

## PARTIES

1. The Plaintiff is Alfred D. Phelps III, an adult resident of Garvin County, Oklahoma.

2. The Defendant is Kerr Machine Co., d/b/a Kerr Pumps and Flow Valve an entity doing business in Murray County, Oklahoma.

## VENUE

3. Plaintiff's claims are for race discrimination and retaliation including in the form of termination after Plaintiff complained of race discrimination in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 and Oklahoma's Anti-Discrimination Act.

4. The conduct giving rise to this action occurred in Murray County, Oklahoma, such that venue is proper in Murray County, Oklahoma.

1

**Exhibit 1**

## STATEMENT OF FACTS

5. Defendants employed at least fifteen employees for each of twenty (20) or more calendar weeks in the current or proceeding calendar year and are employers under Title VII. There is no minimum employee requirement to be subject to the provisions of 42 U.S.C. § 1981 or the OADA.

6. Defendant identifies itself as Plaintiff's employer on Plaintiff's paystubs from the Defendant. Defendant does business as Kerr Pumps and Flow Valve and identified itself as such on employment documents including Defendant's Cell Phone Policy and Attendance Policy which Plaintiff was required to sign at the time of his hiring.

7. Plaintiff (black/African American male) became employed with Defendant on or around February 2021.

8. Plaintiff was originally hired into the position of Forklift Operator, however, beginning around late March/early April 2021, Defendant began training Plaintiff to transition into the position of Machinist/Machine Operator.

9. Plaintiff was at all times qualified for the position he held with Defendant and performed his job duties satisfactorily.

10. After Defendant began training Plaintiff as a Machinist/Machine Operator, he was required to work near other Machinists/Machine Operators of the Defendant, including Zack (last name not known) (white/Caucasian) and Chris (last name not known) (white/Caucasian).

11. Plaintiff's immediate supervisor, Mari (last name not known) (white/Caucasian) assigned Chris to train Plaintiff to become a Machinist/Machine Operator.

12. On or around early April 2021, while training Plaintiff to be a Machinist/Machine Operator, Chris stated to Plaintiff that Zack was a member of the "Aryan Brotherhood", and that he (Chris) also supported the Aryan Brotherhood.

13. Later that same shift, Plaintiff approached his immediate supervisor, Mari, and second-line supervisor, Ryan (last name not known) (white/Caucasian) and complained that Chris had claimed to Plaintiff that both he (Chris) and Zack supported the Aryan Brotherhood.

14. Mari responded to Plaintiff by stating that she would speak with both Chris and Zack regarding Plaintiff's complaint.

15. Following Plaintiff's complaint to his immediate and second-line supervisors, see Para. 13, above, no remedial action occurred nor did any investigation take place into Plaintiff's complaint regarding his white coworkers expressing support for the Aryan Brotherhood.

16. On or around May 3, 2021, Plaintiff was working in his assigned workstation. Zack was also working in the same general location as the Plaintiff, near the locker area where employees kept their personal items.

17. At one point during his shift, Plaintiff walked over to the locker area, which required him to walk behind Zack. At this time, Zack told Plaintiff to stop walking behind him. When Plaintiff asked Zack why he didn't want Plaintiff walking behind him, Zack responded by stating, "I don't like *your kind*, so don't walk behind me because I don't trust you."

18. Plaintiff understood based on the circumstances that Zack's use of the phrase "your kind" was in reference to black/African American people.

19. Shortly thereafter, Plaintiff's supervisor, Mari entered Plaintiff's work area, during which time Plaintiff complained to Mari about the conversation that had just occurred with Zack. Plaintiff specifically complained of Zack stating, "I don't like your kind" and explained that he (Plaintiff) understood Zack to be referring to the fact that Plaintiff is black/African American.

20. Mari responded to Plaintiff by stating that she would talk to Zack regarding the Plaintiff's complaint.

21. After having spoken with Zack (outside of Plaintiff's presence), Mari walked over to Plaintiff and stated that she would escalate Plaintiff's complaint to her immediate supervisor (Plaintiff's second-line supervisor), Ryan.

22. On or around May 4, 2021, prior to his shift beginning (Plaintiff worked the night shift), Plaintiff received a phone call requesting that he come to work immediately. Plaintiff got ready for work and headed to the Defendant's location, however, as Plaintiff was nearly to Defendant's location, he received a phone call telling him to not report to work that night and instead meet with Defendant's Human Resources department the following morning.

23. On or around May 5, 2021, Plaintiff arrived at the Human Resources department where he met with Ryan (second-line supervisor) and two members of Defendant's Human Resources department (both white/Caucasian).

24. During this meeting, Plaintiff was questioned regarding the complaint he had made (see Para. 19, above) regarding Zack. Plaintiff responded by setting out the same information he had provided to Mari the day of the incident (i.e., Zack getting angry with Plaintiff for walking behind him and telling him that he didn't trust "your kind" referring to black/African American people).

25. In response to Plaintiff's complaint regarding Zack's racially discriminatory conduct, Plaintiff was questioned as to why he had walked into Zack's work area.

26. Plaintiff responded by explaining that he (Plaintiff) had simply walked past Zack's work area to get to his locker in order to check his cell phone. Plaintiff also explained that he had received permission from Mari earlier that same day to check his cell phone periodically, as Plaintiff's minor son, who suffers from asthma, was ill and Plaintiff was concerned that if matters regarding his son's illness escalated, he (Plaintiff) would need to take his son to the hospital.

27. At this time, Plaintiff was informed that he was being terminated for violating the Defendant's policies regarding cell phone use and attendance.

28. Defendant's reasons for terminating the Plaintiff are pretextual in that:

    a. Plaintiff had obtained direct permission from his immediate supervisor, Mari, to periodically check his cell phone (which was kept secure in the locker area) throughout his shift; and

    b. Plaintiff had not violated Defendant's attendance policy and, prior to his termination meeting, had never been warned, disciplined or otherwise notified that Defendant was accusing him of violating said policy.

29. Plaintiff's job duties continued to exist after his termination.

30. As a direct result of the Defendant's conduct, Plaintiff has suffered, and continues to suffer, wage loss (including back, present, and front pay along with the value of benefits associated with such wages) as well as emotional distress/dignitary harm including worry, frustration, sadness, and similar unpleasant emotions.

31. At the least, significant factors in the decision to terminate Plaintiff included his race and/or his complaints of race discrimination.

32. Plaintiff has exhausted all administrative remedies required to assert claims against the Defendant by timely filing an EEOC charge of discrimination on August 17, 2021. The EEOC issued Plaintiff's right to sue letter on November 3, 2021, and the Plaintiff received such letter thereafter. This complaint is timely filed within ninety (90) days of Plaintiff receiving his right to sue letter. There is no exhaustion requirement under 42 U.S.C. § 1981.

## COUNT I

Plaintiff incorporates the above allegations and further alleges:

33. Race discrimination and retaliation after Plaintiff complained of discrimination violates 42 U.S.C. § 1981.

34. Under this Count, Plaintiff is entitled to his wage loss (including back, present, and front pay along with the value of benefits associated with such wages) and emotional distress/dignitary harm damages.

35. Because the Defendants' conduct was willful or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to an award of punitive damages.

36. Plaintiff is entitled to an award of attorney fees and costs.

## COUNT II

Plaintiff incorporates the above allegations and further alleges:

37. Race discrimination and retaliation after Plaintiff complained of discrimination violates Title VII of the Civil Rights Act of 1964.

38. Under this Count, Plaintiff is entitled to his wage loss (including back, present and front pay along with the value of benefits associated with such wages) and emotional distress/dignitary harm damages.

39. Because the Defendant's conduct was willful or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to an award of punitive damages under Title VII.

40. Plaintiff is also entitled to an award of attorney fees and costs.

## COUNT III

Plaintiff incorporates the above allegations and further alleges:

41. Race discrimination and retaliation after Plaintiff complained of discrimination violates Oklahoma's Anti-Discrimination Act.

42. Under this Count the Plaintiff is entitled to his wage and benefit loss, as well as an equal amount of liquidated damages.

43. Plaintiff is entitled to an award of attorney fees and costs.

**PRAYER**

**WHEREFORE**, Plaintiff requests this Court enter judgment in his favor and against the Defendant(s) and grant him all compensatory damages suffered, together with all damages, attorneys' fees, costs and interest and such other legal and equitable relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED THIS 13th DAY OF JANUARY 2022.**

HAMMONS, HURST & ASSOCIATES

Mark E. Hammons, OBA No. 3784
Amber L. Hurst OBA No. 21231
Brandon D. Roberts OBA No. 34012
HAMMONS, HURST & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Email: brandon@hammonslaw.com
*Counsel for Plaintiff*